**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Ronnie Manns, | No. CV-24-00879-PHX-DWL |
| Plaintiff, | **ORDER** |
| v. | |
| PennyMac Loan Services LLC, | |
| Defendant. | |

Pending before the Court is a Rule 12(b)(6) motion to dismiss filed by Defendant PennyMac Loan Services LLC ("Defendant").  (Doc. 21.)  For the following reasons, the motion is granted.

## RELEVANT BACKGROUND

On March 18, 2024, Ronnie Manns ("Plaintiff"), who is proceeding *pro se*, commenced an action against Defendant by filing a complaint in Pinal County Superior Court.  (Doc. 1-1.)

On April 17, 2024, Defendant timely removed the action to this Court based on diversity jurisdiction.  (Doc. 1.)

On April 25, 2024, Plaintiff filed his operative pleading, the First Amended Complaint ("FAC").  (Doc. 17.)  The FAC alleges that Plaintiff and his wife obtained a home loan from Defendant, which is governed by a deed of trust, and that "Defendant breached the contract when [it] misapplied the September 22, 2020, the December 30, 2022, and the March 2, 2023, payments by deeming [those payments] principal reduction

1    instead of a periodic payment." (*Id.* at 1-2.) The FAC alleges that these acts of

2    misapplication "have proven very damaging," but does not explain why. (*Id.* at 2.) Next,

3    the FAC alleges that Defendant engaged in "Unfair Accounting Practices" "by attempt of

4    an unauthorized withdraw from Plaintiff's checking account on January 1, 2022, causing

5    Plaintiff's account to be overdrawn and major turmoil between Plaintiff, Plaintiff's bank,

6    and in Plaintiff's household." (*Id.*) Finally, the FAC alleges that Defendant engaged in

7    "False Representation" on two occasions by failing to properly document certain payments

8    made by Plaintiff. (*Id.* at 3.) Based on these claims, the FAC requests "award of a clear

9    and free title" to Plaintiff's property, as well as "correction of the record and credit report,

10    punitive damages of no less than one million dollars ($1,000,000.00) and whatever other

11    remedy that the court feels is fair and just." (*Id.*)

12       On May 10, 2024, Defendant filed the pending motion to dismiss. (Doc. 21.)

13       On May 15, 2024, Plaintiff filed an opposition. (Doc. 22.)

14       On May 23, 2024, Defendant filed a reply. (Doc. 23.)

**DISCUSSION**

15

16    I.    <u>Legal Standard</u>

17       Under Rule 12(b)(6), "to survive a motion to dismiss, a party must allege 'sufficient

18    factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *In*

19    *re Fitness Holdings Int'l, Inc.*, 714 F.3d 1141, 1144 (9th Cir. 2013) (citation omitted). "A

20    claim has facial plausibility when the plaintiff pleads factual content that allows the court

21    to draw the reasonable inference that the defendant is liable for the misconduct alleged."

22    *Id.* (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "[A]ll well-pleaded allegations of

23    material fact in the complaint are accepted as true and are construed in the light most

24    favorable to the non-moving party." *Id.* at 1144-45 (citation omitted). However, the court

25    need not accept legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 679-

26    80. Moreover, "[t]hreadbare recitals of the elements of a cause of action, supported by

27    mere conclusory statements, do not suffice." *Id.* at 678. The court also may dismiss due

28    to "a lack of a cognizable legal theory." *Mollett v. Netflix, Inc.*, 795 F.3d 1062, 1065 (9th

Cir. 2015) (citation omitted).

II.     The Parties' Arguments

Defendant argues the FAC is subject to dismissal under Rule 12(b)(6) for an array of reasons.  (Doc. 21.)  First, Defendant argues the contract claim fails because the deed of trust identifies how loan payments will be applied and all three of the alleged misapplications identified in the FAC were, in fact, proper applications pursuant to the deed of trust.  (*Id.* at 8-10.)  Second, Defendant argues the contract claim also fails for the independent reason that "Plaintiff alleges no damages that flow from [the] alleged breach of contract—[Plaintiff] instead asks the court to extinguish the deed of trust, rendering him a free house, and also award him $1,000,000 in punitive damages.  Even if [Defendant] breached the contract's terms (it did not), [P]laintiff is not entitled to free and clear title and punitive damages as a result of the breach."  (*Id.* at 10.)  Third, Defendant argues that, to the extent Plaintiff asserts a separate "unfair accounting practices" claim, any such claim fails because (a) it is not cognizable under Arizona law and (b) Defendant could not have acted unfairly by applying Plaintiff's payments consistent with the deed of trust.  (*Id.* at 11.)  Fourth, Defendant argues that any "false representation" claim fails because fraud was not pled with particularity, because there are insufficient allegations of scienter, reliance, and injury, and because the exhibits attached to the FAC demonstrate there was no misrepresentation.  (*Id.* at 11-12.)  Fifth, Defendant argues that any tort claims are also barred by the economic loss doctrine.  (*Id.* at 12.)  Sixth, and at a minimum, Defendant argues that any claim for punitive damages must be dismissed.  (*Id.* at 12-13.)

In response, Plaintiff argues that because the deed of trust includes the phrase "[s]uch payments shall be applied to each Periodic Payment in the order in which it became due," this shows that his "early September 22[, 2020] payment should have been applied to November 2020's due date" instead of being applied to reduce the loan's principal balance.  (*Id.* at 1-2.)  Turning to damages, Plaintiff "admits that he is lacking in the ability to place a monetary value on the cost of a reputation, on self-esteem, on dignity, and on self-respect" and then contends, somewhat confusingly, that he "was blessed in the past to

have been able to amass the large amounts of fees and charges paid to Defendant like late charges, non-sufficient fund charges, short payment corporate advances, and property inspections." (*Id.* at 3.)  Plaintiff continues: "[T]his duress and stress is beginning to take a major toil [sic] on Plaintiff's health.  The plaintiff places a monetary value on punitive damages and asks for no less than one point five million dollars along with clear title to the property." (*Id.*)  Finally, as for his "unfair accounting practices" and "false representation" claims, Plaintiff fails to address the dismissal arguments raised by Defendant and seems to indicate that both claims turn on the alleged misapplication of his September 22, 2020 payment.  (*Id.*)

In reply, Defendant argues that Plaintiff has seemingly abandoned any contract claim premised on the December 2022 and March 2023 payments, that the September 2020 payment was properly applied to the loan's principal balance consistent with § 2 of the deed of trust, and that Plaintiff's contrary theory—that the September 2020 payment should have been applied toward the monthly payment that would have become due in November 2020—is contrary to § 2 of the deed of trust and nonsensical, because "[i]f [Defendant] applied payments against the loan as [P]laintiff suggests, extra payments made by borrowers would go toward the next potential payment into perpetuity instead of lowering the principal balance."  (Doc. 23 at 1-3.)  Next, Defendant contends that, to the extent Plaintiff seeks to recover reputational damages pursuant to his contract claim, such damages are both speculative and not cognizable under Arizona law.  (*Id.* at 3-4.) Defendant also contends that Plaintiff's reference to "large amounts of fees and charges paid to Defendant" cannot salvage his contract claim because (a) such fees are not alleged in the FAC and (b) at any rate, Defendant advanced various funds to Plaintiff and also "waived a considerable amount of fees and charges so [P]laintiff could meet his monthly payment obligations."  (*Id.* at 4.)  Finally, Defendant notes that Plaintiff failed to address its dismissal arguments related to the "unfair accounting practices" and "false representation" claims.  (*Id.* at 4-5.)

…

III.   Analysis

The Court agrees with Defendant that the FAC is subject to dismissal under Rule 12(b)(6).

As an initial matter, although Plaintiff faults Defendant for using his September 22, 2020 payment to reduce the principal balance of his loan instead of applying it toward the monthly payment that was not yet due but would have become due in November 2020, there is a strong argument that Defendant's approach was permissible under § 2 of the deed of trust.  (Doc. 21-1 at 4 ["[A]ll payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3.  Such payments shall be applied to each Periodic Payment in the order in which it becomes due.  Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note."].)  Nevertheless, even assuming for the sake of argument that Defendant breached the deed of trust by misapplying the September 22, 2020 payment (and by misapplying the other payments referenced in the FAC), the FAC does not allege any resulting *damages*.[1]  In fact, the FAC alleges that from August 2020 to January 2022, Plaintiff was "on time" on all of his payments (Doc. 17 at 2), which seems to undercut any suggestion that Plaintiff was harmed by the manner in which Defendant applied a payment he made in September 2020.  At any rate, the absence of damages means Plaintiff cannot succeed on his contract claim.  *See, e.g., Thomas v. Montelucia Villas, LLC*, 302 P.3d 617, 621 (Ariz. 2013) ("To bring an action for the breach of the contract, the plaintiff has the burden of proving the existence of the contract, its breach and the resulting damages.") (citation omitted); *Chartone, Inc. v. Bernini*, 83 P.3d 1103, 1111 (Ariz. Ct. App. 2004) (noting that "damages [are] an essential element of [a] breach-of-contract claim").

In a seeming effort to shore up this deficiency, Plaintiff asserts in his opposition

---

[1]    Although the FAC asserts that the payment misapplications have "proven very damaging" (Doc. 17 at 2), such conclusory, fact-free allegations are insufficient to state a claim.  *Iqbal*, 556 U.S. at 679-80.

brief that he has suffered damages arising from unspecified harm to his "reputation," "self-esteem," "dignity," and "self-respect." (Doc. 22 at 3.) But putting aside that fact that the FAC does not contain any allegations regarding reputational or emotional harm and that the references to those categories of harm in the opposition brief are vague and undeveloped, such damages are not recoverable under Arizona law in a contract action. *Lindsey v. Univ. of Arizona*, 754 P.2d 1152, 1158 (Ariz. Ct. App. 1987) ("In an action for breach of contract, the employee is not permitted recovery for injury to his reputation because the computation of damages is too speculative and the damage cannot reasonably be presumed to be within the contemplation of the parties when they entered into the contract."); *Davis v. Bank of America Corp.*, 2012 WL 5984939, *3 (D. Ariz. 2012) ("Under Arizona law, punitive damages and damages for non-economic injuries, like emotional distress, may not be recovered for breach of contract.") (citations omitted); *Fox v. Citicorp Credit Services, Inc.*, 15 F.3d 1507, 1517 (9th Cir. 1994) (with respect to the Arizona "state-law claim . . . alleging breach of contract," affirming the district court's grant of summary judgment where the plaintiffs "failed to put forward evidence of any contractual damages" and instead only "claimed . . . emotional distress and mental anguish," because such damages are not "of a contractual nature"). Plaintiff also seems to suggest for the first time in his opposition brief that he sustained damages in the form of "late charges, non-sufficient fund charges, short payment corporate advances, and property inspections" (Doc. 22 at 3), but those allegations do not appear in the FAC and Plaintiff makes no effort to develop them or tether them to the challenged acts of payment misapplication.

This leaves Plaintiff's "unfair accounting practices" and "false representation" claims. The Court agrees with Defendant that the former is subject to dismissal because it is not cognizable under Arizona law. Nor has Plaintiff sufficiently alleged any damages arising from challenged accounting practices, as discussed in the previous paragraph. Finally, the "false representation" claim is subject to dismissal because, at a minimum, there are insufficient allegations of reliance and resulting damage. *Carrel v. Lux*, 420 P.2d

564, 568 (Ariz. 1966) (under Arizona law, "[t]he elements necessary to establish fraudulent misrepresentation" include "the hearer's . . . reliance on" the false representation and "his consequent and proximate injury"); *KB Home Tucson, Inc. v. Charter Oak Fire Ins. Co.*, 340 P.3d 405, 412 n.7 (Ariz. Ct. App. 2014) (under Arizona law, the "elements of negligent misrepresentation" include that "the plaintiff justifiably relied on the incorrect information" and "resulting damage").

IV.    <u>Leave To Amend</u>

Defendant asks the Court to dismiss the FAC "with prejudice" because "any amendment is futile." (Doc. 21 at 1; Doc. 23 at 6.)  This request implicates Rule 15(a) of the Federal Rules of Civil Procedure, which "advises the court that 'leave [to amend] shall be freely given when justice so requires.'"  *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003).  "This policy is 'to be applied with extreme liberality.'"  *Id.*  Thus, leave to amend should be granted unless "the amendment: (1) prejudices the opposing party; (2) is sought in bad faith; (3) produces an undue delay in litigation; or (4) is futile."  *AmerisourceBergen Corp. v. Dialysist W., Inc.*, 465 F.3d 946, 951 (9th Cir. 2006).

Although the Court is quite skeptical that Plaintiff will be able to add any new factual allegations that could remedy the deficiencies identified in Part III above, the Court is also mindful that courts "have an obligation where the petitioner is pro se . . . to construe the pleadings liberally and to afford the petitioner the benefit of any doubt.  In fact, before dismissing a pro se complaint the district court must provide the litigant with notice of the deficiencies in his complaint in order to ensure that the litigant uses the opportunity to amend effectively.  A district court should not dismiss a pro se complaint without leave to amend unless it is absolutely clear that the deficiencies of the complaint could not be cured by amendment."  *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012) (cleaned up).  Given these principles, the Court concludes that Plaintiff should be granted leave to amend.

…

…

Accordingly,

**IT IS ORDERED** that:

1.      Defendant's motion to dismiss (Doc. 21) is **granted**.  The FAC is dismissed.

2.      Plaintiff may file a Second Amended Complaint ("SAC") within 14 days of the issuance of this order.  Any changes shall be limited to attempting to cure the deficiencies raised in this order and Plaintiff shall, consistent with LRCiv 15.1(a), attach a redlined version of the pleading as an exhibit.

3.      If Plaintiff does not file a SAC within 14 days of the issuance of this order, the Clerk shall enter judgment accordingly and terminate this action.

Dated this 26th day of June, 2024.

Dominic W. Lanza
United States District Judge

- 8 -