**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Ronnie Manns,<br><br>　　　　Plaintiff,<br><br>v.<br><br>PennyMac Loan Services LLC,<br><br>　　　　Defendant. | No. CV-24-00879-PHX-KML<br><br>**ORDER** |

    Plaintiff Ronnie Manns and his wife took out a loan from defendant PennyMac Loan Services LLC to purchase a home. That loan is secured by a deed of trust. The Manns believe PennyMac breached the terms of the deed of trust by mishandling three of their payments. But the Manns have not stated a viable breach of contract claim despite repeated attempts so the current complaint is dismissed without leave to amend.

**I.**　　**Factual Background**

    The following facts are based on the allegations of the second amended complaint, the deed of trust, and other documents either attached to or referenced in the second amended complaint. *See United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) (identifying documents that can be deemed incorporated by reference). Most of the details regarding the Manns's payments are drawn from a letter PennyMac sent the Manns in response to a complaint the Manns made to the Consumer Financial Protection Bureau. (Doc. 21-2 at 2.) The Manns reference that letter in their complaint and the court deems that letter incorporated by reference.

**A. The Note and Payment**

In June 2020, the Manns executed a promissory note ("the Note") with PennyMac for $264,990. The Manns used those funds to purchase a home in Maricopa. The Note is secured by a deed of trust, an excerpt of which the Manns attached to a prior complaint and which PennyMac provided unexcerpted. (Doc. 17 at 9; 21-2 at 9.) The deed of trust contemplates monthly payments, with a 15-day grace period. (Doc. 21-2 at 20.) The deed of trust sets forth a hierarchy establishing how PennyMac would handle and apply payments. *See Ritchie*, 342 F.3d at 908 (when resolving a motion to dismiss a court may "consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment"). The Manns's breach of contract claim alleges PennyMac mishandled three monthly payments. Thus, the deed of trust's provisions specifying how PennyMac must handle payments are set out in detail.

Section 1 of the deed of trust requires the Manns make monthly payments sufficient to cover principal and interest on the borrowed funds as well as any escrow items. (Doc. 21-2 at 11.) That section also states that if the Manns fall behind on their payments, PennyMac may "accept any payment or partial payment," but "is not obligated to apply such payments at the time such payments are accepted." (Doc. 21-2 at 11.) In other words, if the Manns are behind on their payments and pay an amount insufficient to bring the loan current, PennyMac may accept the payment but hold it in what PennyMac refers to as a "suspense account." (Doc. 28 at 3.) If the Manns do not make a payment to bring the loan current within a "reasonable period of time," the amount in the suspense account may be applied to the outstanding balance or returned to the Manns. (Doc. 21-2 at 11.)

Section 2 of the deed of trust establishes PennyMac must apply payments "in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3 [*i.e.*, escrow items]." (Doc. 21-2 at 11.) Payments are applied to each monthly payment "in the order in which it became due. Any remaining

amounts shall be applied first to late charges, second to any other amounts due under [the deed of trust], and then to reduce the principal balance of the Note." (Doc. 21-2 at 11.)

The Manns began making monthly payments in July 2020 but for present purposes the relevant payment events began in June 2022.[1] That month, PennyMac increased the Manns's monthly payment because of increases in property taxes and homeowners insurance. Starting August 1, 2022, the new monthly payment due was $1,628.44. (Doc. 21-2 at 25.) On August 2, 2022, the Manns made a payment of $1,456.25. (Doc. 21-3 at 52.) Because that was less than the amount due, the payment was placed in the suspense account. On August 16, 2022, PennyMac imposed a $65.14 late fee. On September 2, 2022, the Manns made a payment of $1,623.55 and indicated it should be applied to their escrow account.[2] PennyMac did so. Applying that amount to the escrow account meant the Manns's required monthly payment became $1,493.15. (Doc. 21-2 at 3.)

On September 3, 2022, the Manns made a payment of $237.33. Combining that payment with the previous payment that was being held in the suspense account ($237.33+$1,456.25) meant the Manns had made a total payment of $1,693.58. That was sufficient to cover the monthly payment (*i.e.*, $1,493.15). The Manns did not make another payment before September 15, 2022, and PennyMac imposed another late fee of $59.73. On September 30, 2022, the Manns made a payment of $1,493.15 as well as a payment of $59.73. (Doc. 21-2 at 4.) No payments were made in October 2022.

On November 2, 2022, the Manns made a payment of $1,456.25 but because it was

---

[1] The Manns also attached excerpts of various statements showing monthly payment activity to a prior complaint and referenced those statements again in the operative complaint. (Doc. 17 at 5-7, 12-13, 15-23; Doc. 27 at 2.) Again, PennyMac provided the complete records. (Docs. 21-2 at 25-35, 21-3 at 37-59.) The court considers all of these records because the incorporation-by-reference "doctrine prevents plaintiffs from selecting only portions of documents that support their claims, while omitting portions of those very documents that weaken—or doom—their claims." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018).

[2] The escrow shortage was $1,623.55. (Doc. 21-2 at 26.) The Manns appear to have believed that paying that amount would mean the amount of their monthly payments would not increase. That was not accurate. The monthly escrow payment increased from $235.75 to $284.66, not including the "shortage payment" and "escrow reserve payment." (Doc. 21-2 at 25.) In effect, the Manns paying $1,623.55 in a lump sum meant they would not be required to pay additional amounts each month to pay the "shortage payment" and the "escrow reserve payment," but they were still required to pay the increased escrow amount of $284.66.

- 3 -

less than the required monthly payment, that payment was placed in the suspense account. On November 4, 2022, the Manns made a payment of $73.80. Those two payments combined were sufficient to cover the October 2022 payment, with $36.90 left in the suspense account. On November 10, 2022, the Manns made a payment of $1,493.15, the exact amount of the Manns's new monthly payment. That payment was applied and the $36.90 held in the suspense account was applied to the principal.

On December 2, 2022, the Manns made a payment of $1,493.15, which satisfied the monthly payment amount. On December 30, 2022, the Manns made a payment of $1,456.25. That amount was less than the amount due for the January 2023 payment. PennyMac applied the $1,456.25 to the principal. Because the Manns made no additional payment by January 15, 2023, PennyMac applied a late fee of $59.73. The Manns contacted PennyMac on January 25, 2022, and stated the December 30 payment was meant to apply to the January monthly payment. PennyMac informed the Manns that the payment was short by $36.90. On January 25, 2023, the Manns made a payment of $36.90. That payment prompted PennyMac to reallocate the December 30 payment, combine that payment with the additional $36.90, and the resulting total payment satisfied the January 2023 payment. PennyMac waived the late fee. (Doc. 21-2 at 4.) As of the end of January 2023, the Manns were current on their payments.

The Manns made a sufficient payment to cover the February 2023 payment. On March 2, 2023, the Manns made a payment of $1,456.25. That was insufficient to cover the March payment and it was placed in the suspense account. The Manns then made a $1,493.15 payment on March 3, 2023. That was the exact monthly payment owed and it was applied to satisfy the March 2023 payment. Because the March 3 payment was sufficient, PennyMac still had the March 2 payment (*i.e.*, $1,456.25) in the suspense account. In one portion of its filings PennyMac represents the March 2 payment was applied to the principal balance on March 6, 2023, but elsewhere it appears PennyMac applied that payment to the principal on March 31, 2023. (*Compare* Doc. 21-2 at 4 *with* Doc. 21-3 at 48.) The Manns's operative complaint alleges something occurred on March

1  31, 2023, and the court will assume they are referencing application of the March 2
2  payment to the principal. On March 7, 2023, the Manns made a payment of $37.90 that
3  was applied to the principal balance. The Manns did not make another payment until May
4  2, 2023.

5  From May 2023 through November 2023, the Manns continued to make payments
6  of amounts that were not equal to the monthly amount owed and the payments were placed
7  in the suspense account and later combined to satisfy monthly payments. As of November
8  21, 2023, the Manns were current on their loan and the December 2023 amount had been
9  paid. (Doc. 21-2 at 6.) Neither the second amended complaint nor any document
10 incorporated by reference explains what relevant events, if any, occurred after December
11 2023.

### B. Procedural History

13 The Manns filed their original complaint in state court and PennyMac removed to
14 this court. The Manns then amended their complaint to assert claims for breach of contract,
15 "unfair accounting practices," and "false representations." PennyMac moved to dismiss all
16 claims and the court granted the motion in full. Only the analysis on the breach of contract
17 claim is relevant here. In explaining why the breach of contract claim was dismissed, the
18 court noted a "strong argument" that PennyMac had not breached the terms of the deed of
19 trust regarding how it allocated payments. (Doc. 26 at 5.) But the court did not base the
20 dismissal on that ground because the Manns had not alleged they suffered any damages as
21 a result of the alleged breach. The court granted leave to amend but noted it was "quite
22 skeptical" the Manns would be able to allege additional facts to state a plausible claim for
23 breach of contract. (Doc. 26 at 7.)

24 The Manns amended their complaint to assert a single claim for breach of contract.
25 (Doc. 27.) The only meaningful factual allegations in the complaint are that PennyMac
26 failed to follow the deed of trust's requirements for how payments must be allocated.
27 According to the Manns, PennyMac failed to do so by misallocating payments "on
28 December 30, 2022, March 31, 2023, and February 29, 2024." (Doc. 27 at 3.) PennyMac

again moved to dismiss. (Doc. 28.)

**II.     Analysis**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted)). This is not a "probability requirement," but a requirement that the factual allegations show "more than a sheer possibility that a defendant has acted unlawfully." *Id.* A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "[D]etermining whether a complaint states a plausible claim is context specific, requiring the reviewing court to draw on its experience and common sense." *Id.* at 663–64.

A plausible breach of contract claim must be supported by factual allegations showing (1) the existence of a contract, (2) a breach of that contract, and (3) resulting damages. *Chartone, Inc. v. Bernini*, 83 P.3d 1103, 1111 (Ariz. Ct. App. 2004). The Manns have adequately alleged the existence of a contract but there are no factual allegations establishing PennyMac breached that contract. The complaint alleges PennyMac breached the contract on December 30, 2022, March 31, 2023, and February 29, 2024, but there are no allegations explaining what PennyMac did on those dates nor explaining how PennyMac's actions breached the deed of trust.

It appears the Manns allege PennyMac breached the deed of trust by applying the December 30, 2022, payment to the loan's principal. Given the outstanding balance at that time and the Manns's payments, it was permissible for PennyMac to allocate that payment to the principal. The payment was smaller than the required monthly payment and the deed of trust allowed PennyMac to apply that payment to the principal. PennyMac later reallocated the payment as the Manns requested and waived the late fee. PennyMac choosing to reallocate the payment does not show the original handling was contrary to the terms of the deed of trust. Without factual allegations showing any wrongdoing in

connection with the December 30, 2022, payment, the Manns have not stated a claim for relief based on that payment.

The Manns allege PennyMac breached the deed of trust on March 31, 2023. It appears the Manns believe a breach occurred on that date because that is when PennyMac allocated to the principal the Manns's payment dated March 2, 2023. Assuming that is the Manns's position, again the terms of the deed of trust specifically allowed PennyMac to make that allocation. As of March 31, 2023, there was no interest due under the note. Thus, PennyMac was entitled to apply the amount to the loan principal as set forth in the deed of trust. (Doc. 21-2 at 11.)

Finally, the Manns allege PennyMac breached the deed of trust on February 29, 2024. There are no factual allegations in the complaint detailing what occurred on that date and the documents incorporated by reference do not shed any light on what happened. Thus, the Manns have not stated a plausible claim that a breach of contract occurred on that date.

The court previously noted it was "quite skeptical" the Manns would be able to allege sufficient facts to state a plausible claim. Despite that skepticism, the Manns were granted leave to amend. The second amended complaint again failed to identify the basic facts supporting the Manns's breach of contract claim. Because there was no meaningful improvement in the second amended complaint, it would be futile to grant further leave to amend.

Accordingly,

**IT IS ORDERED** the Motion to Dismiss (Doc. 28) is **GRANTED**. The Clerk of Court is directed to enter judgment in favor of defendant and close this case.

Dated this 16th day of December, 2024.

Honorable Krissa M. Lanham
United States District Judge